890 So.2d 626 (2004)
Adam SIMS, Sr. and Jacqueline Sims, Individually and On Behalf of their Minor Children, Adam Sims, Jr. and Allen Sims
v.
Mike CEFOLIA d/b/a We Can Dig It, Inc., Iberic International, Inc., Pan American Insurance Company and XYZ Insurance Company.
No. 04-CA-343.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*628 Richard C. Bates, Ron A. Austin, Harvey, LA, for Plaintiff/Appellant.
Kevin L. Cole, James A. Prather, Three Sanctuary Boulevard, Mandeville, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
The plaintiffs, Adam Sims, Sr. and Jacqueline Sims, individually, and on behalf of their minor children, Adam Sims, Jr. and Allen Sims, appeal the summary judgment granted in favor of Iberic International ("Iberic"), Carefree Realty ("Carefree"), and St. Paul Reinsurance Company, Ltd. ("St. Paul"), dismissing the plaintiffs' claims against them with prejudice. After reviewing the record before us, as well as the applicable jurisprudence, we affirm.

FACTS AND PROCEDURAL HISTORY
In November 1998, an apartment complex located on Ridgelake Drive in Metairie, Louisiana, which is owned by Iberic and managed by Carefree, was having plumbing problems. Carefree entered into a contract with We Can Dig It, Inc. ("WCDI"), which was owned and operated by Mike Cefolia, to make the necessary repairs. Adam Sims, Jr. ("Adam") and Allen Sims ("Allen"), ages 16 and 15 respectively, were employed by WCDI as general laborers whose primary job was to dig an underground tunnel that would allow access to sewerage lines beneath the apartment complex.
On December 3, 1998, while Adam and Allen were working, the concrete sidewalk and/or slab above a portion of the tunnel collapsed, trapping both boys under it. Allen died on December 22, 1998 from the injuries that he sustained in the collapse, and Adam suffered injuries to his right ankle in the accident.
On February 5, 1999, the boys' parents, Adam Sims, Sr. and Jacqueline Sims, filed suit individually and on behalf of their minor children against Mike Cefolia d/b/a *629 We Can Dig It, Inc., Iberic, Pan American Insurance Co. and XYZ Insurance Company. On July 20, 1999, the plaintiffs filed a supplemental and amending petition adding St. Paul, Zurich Reinsurance Company, Carefree, and David Carter's Plumbing as defendants. On November 7, 2000, the matter was transferred to the Twenty-Fourth Judicial District Court for the Parish of Jefferson.
In their original and amended petitions, the plaintiffs allege, among other things, that Iberic created a hazardous situation and allowed it to exist on its premises, maintained a defective premises, created an attractive nuisance, failed to report violations of Child Labor Laws, and failed to report OSHA health and safety violations. The plaintiffs assert that, among other acts of negligence that may be shown at trial, Carefree contracted with an unlicensed and/or unqualified contractor, created a hazardous situation and allowed it to exist on its premises, maintained a defective premises, created an attractive nuisance, failed to report violations of Child Labor Laws, and failed to report OSHA violations. The plaintiffs contend that St. Paul is liable in this case because it is the liability insurer of Iberic.
On April 10, 2002, defendants, Iberic, Carefree, and St. Paul, filed a motion for summary judgment contending that there is no evidence of liability on the part of Iberic or Carefree, that Adam and Allen were employees of WCDI which was an independent contractor, and that neither Iberic nor Carefree can be vicariously liable for the torts of an independent contractor. They also assert that neither Iberic nor Carefree created the condition that caused the accident or had any knowledge of a hazardous condition. Further, they argue that Iberic and Carefree had no knowledge of any violations of Child Labor Laws or OSHA health and safety standards. In support of their motion for summary judgment, the defendants attached the original and amended petitions; the deposition of Adam Sims, Jr.; an affidavit of Carefree's owner, Ellis Schexnayder, with a work proposal from WCDI attached; and an affidavit of Iberic's corporate officer, Elias Asfura.
The plaintiffs filed an opposition to the defendants' motion for summary judgment, arguing that WCDI was not an independent contractor and, even if the plaintiffs were employees of an independent contractor, the defendants hired them to perform inherently dangerous or "ultrahazardous" activities. The plaintiffs further contended that the defendants' premises were defective because the apartment complex's sidewalk was not reinforced by rebar, which created an unreasonable risk of harm to Adam and Allen. In support of their opposition, the plaintiffs quoted portions of Mike Cefolia's deposition. The defendants filed a reply with Mike Cefolia's entire deposition attached.
The defendants' motion for summary judgment was set for hearing on September 29, 2003,[1] and counsel appeared in chambers and submitted the matter on memoranda and affidavits.[2] The trial judge took the matter under advisement. On October 21, 2003, the trial judge granted *630 the defendants' motion for summary judgment, finding that WCDI was an independent contractor over which these defendants exercised no control, and dismissed all of the plaintiffs' claims against these defendants. It is from this judgment that the plaintiffs appeal.

DISCUSSION
Appellate courts review summary judgment de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Magic Moments Pizza, Inc. v. Louisiana Restaurant Ass'n., 02-160 (La.App. 5 Cir. 5/29/02), 819 So.2d 1146, 1149; Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152, 1155. Summary judgments are now favored in the law and the rules should be liberally applied. Nutt v. City of Gretna, 00-1864 (La.App. 5 Cir. 5/16/01), 788 So.2d 617, 619. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966.
LSA-C.C.P. art. 966 provides that a summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, establish that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. Prince v. K-Mart Corp., 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248. A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action. Elmwood MRI, Ltd. v. Paracelsus Pioneer Valley Hosp., Inc., et al., 01-764 (La.App. 5 Cir. 12/26/01), 806 So.2d 743, 747. In ruling on a motion for summary judgment, the court must look to the substantive law applicable to the case. Buckley v. Vess Beverage, Inc., 99-1073 (La.App. 5 Cir. 3/22/00), 759 So.2d 133, 134, writ denied, 00-1108 (La.5/31/00), 762 So.2d 634.
On appeal, the plaintiffs argue that the trial court erred in finding that WCDI was an independent contractor. The defendants respond that the trial court correctly found that Adam and Allen's employer, WCDI, was an independent contractor.
In Hickman v. Southern Pac. Transport Co., 262 La. 102, 262 So.2d 385, 390-391 (1972), the Louisiana Supreme Court found the following factors relevant in determining whether the relationship of principal and independent contractor exists: 1) there is a valid contract between the parties; 2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; 3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services rendered; 4) there is a specific price for the overall undertaking agreed upon; and 5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. See also Tower Credit, Inc. v. Carpenter, 01-2875 (La.9/4/02), 825 So.2d 1125, 1129, and Mack v. CDI Contractors, Inc., 99-1014 (La.App. 5 Cir. 2/29/00), 757 So.2d 93, 97.
In support of their motion for summary judgment, the defendants presented a document signed by Brian Hoard "d/b/a We Can Dig It" and Ellis Schexnayder, the owner of Carefree Realty, for excavation by WCDI under the building to locate a problem with the sewer line, with terms and costs. WCDI was allowed to employ non-exclusive means to complete the work under its portion of the agreement, and Carefree did not reserve the right to supervise *631 the work or hire any employees. The defendants also submitted an affidavit from Elias Asfura of Iberic, in which he stated that Iberic did not exercise any control over the project or WCDI's employees. Additionally, Mike Cefolia of WCDI and Adam Sims, Jr. both testified that neither Iberic nor Carefree controlled the manner in which the work was performed by WCDI. In Adam's deposition, he stated that Mr. Hoard was the only person who supervised and instructed him, and he did not speak with anyone at the job site other than WCDI employees. In Mike Cefolia's deposition, when asked if he had to get periodic approvals from Mr. Schexnayder, he replied, "Not really. It was  He hired us to go under it and find it and fix it. We knew approximately how far we were going, so we knew approximately how much it would be." WCDI was employed, according to the signed proposal, to dig underground at a specific price per foot with specific charges for extra work, which indicates a specific price for the overall undertaking. Finally, Mike Cefolia stated in his deposition that his agreement with Carefree was "at will."
Taking all of these facts into consideration, along with the factors set forth in Hickman, supra, we find that the trial judge was correct when he found that WCDI was hired as an independent contractor for this project. Accordingly, the plaintiffs' argument on this issue is without merit.
On appeal, the plaintiffs further contend that the trial court erred in ruling that there was no genuine issue of material fact regarding the liability of these defendants. Although the plaintiffs acknowledge that, as a general rule, property owners are not liable for the torts of an independent contractor, there are two exceptions to this rule. These two exceptions, as set forth in Villaronga v. Gelpi Partnership Number 3, 536 So.2d 1307, 1310 (La.App. 5 Cir.1988), writ denied, 540 So.2d 327 (La.1989) are: 1) a property owner cannot avoid liability if he exercises control over the contractor's methods of performing the work or gives express or implied authorization to an unsafe practice; and 2) a property owner may not avoid liability for the actions of an independent contractor if the work undertaken is inherently or intrinsically dangerous, or ultrahazardous.
The evidence submitted in support of the defendants' motion for summary judgment clearly establishes that neither Carefree nor Iberic exercised any control over WCDI's methods and means of performing the work, and the plaintiffs have not refuted this evidence. As such, Carefree and Iberic did not approve or disapprove of the methods of work, and they did not give authorization to any unsafe practices. Accordingly, the first exception to the independent contractor defense has not been met in this case.
The plaintiffs argue that the second exception has been established, because underground tunneling beneath immovable structures is inherently dangerous or ultrazardous. They further contend that digging a 42-foot tunnel beneath an apartment complex required the plaintiffs to rely on the structural integrity of the building and sidewalks, and the failure to have "rebar" or reinforcing steel wiring in the concrete was the primary cause of the accident that killed Allen Sims. The defendants respond that tunneling work is not ultrahazardous and that it was WCDI's negligence in failing to take any precautions during the work or to stabilize the tunnel that caused the accident.
"Ultrahazardous" activities are those which can cause injury to others even when conducted with the greatest prudence and care. Vicknair v. Boh Bros. *632 Const. Co., L.L.C., 03-1351 (La.App. 5 Cir. 3/30/04), 871 So.2d 514, 521. The critical inquiry in determining whether activity is ultrahazardous or inherently dangerous is whether it can be made safe when it is performed in a proper and workmanlike manner. Buras v. Lirette, 97-1255 (La.App. 4 Cir. 12/23/97), 704 So.2d 980, 983.
In Adam Sims, Jr.'s deposition, he indicated that no safety equipment, such as helmets or safety glasses, was used by WCDI employees at the job site. He further stated that WCDI did not take any measures to stabilize or support the tunnel and no one talked to him about bracing the sides. In Mike Cefolia's deposition, he stated, "....you get injured doing anything. I don't think it's any more dangerous doing that [digging a tunnel] than it would be anything else in construction." He further stated that no one working for WCDI has ever gotten hurt doing excavation work other than this one time.
Although there is some danger in all aspects of construction, the evidence presented does not support the plaintiffs' contention that tunneling cannot be made safe when it is performed in a proper and workmanlike manner. In this case, the deposition testimony, evidence, and caselaw establish that this work was not ultrahazardous or inherently dangerous. Accordingly, we find that the trial court was correct in finding that there were no genuine issues of material fact on this issue, and the second exception to the independent contractor defense does not apply in this case.
Finally, on appeal, the plaintiffs contend that the trial court erred in granting summary judgment to these defendants based solely on an independent contractor defense, because in their original and amended petitions, the plaintiffs asserted several theories of recovery that are not foreclosed by this defense. They argue that there remain genuine issues of material fact regarding the following theories of recovery: 1) violations of state and local safety standards; 2) OSHA violations; 3) Child Labor law violations; 4) hiring an unlicensed and/or unqualified contractor; 5) maintaining defective premises; 6) creating or allowing hazardous conditions on the premises.
The plaintiffs specifically argue that the defendants are liable as the owner and/or custodian of the property where the accident occurred, and there is a genuine issue of material fact as to whether the premises was defective, because the concrete was not reinforced with supporting materials. The defendants respond that the entire record was considered by the trial judge, as indicated in his reasons for judgment, and that all theories of recovery were addressed in the summary judgment pleadings.
In support of their motion for summary judgment, the defendants submitted affidavits from Elias Asfura of Iberic and Ellis Schexnayder of Carefree, indicating that they were not aware of any OSHA or health standard violations or Child Labor violations. Further, in the deposition of Adam Sims, Jr., he indicated that his supervisor, Brian Hoard, told him to put an older age on his employment paperwork and that he could not tell Mike Cefolia his true age, because he would lose the job. The defendants' affidavits indicate that Iberic and Carefree did not know of any child labor violations, and the testimony of Adam Sims, Jr. reveals that even the owner of WCDI, Mike Cefolia, was deceived about the true age of his employees. Furthermore, there has been no showing that WCDI was an unlicensed or unqualified contractor, or that Iberic and Carefree had any reason to know that WCDI was unqualified.
*633 With regard to the allegations that the premises were defective and contributed to the accident because the concrete was not reinforced with appropriate material, even if the plaintiffs can show that the lack of rebar in the concrete contributed to the accident, in order to recover under premises liability pursuant to LSA-C.C. arts. 2317, 2317.1, and 2322, the plaintiffs must show that the defendants knew or should have known of the defect. In this case, the affidavits of Mr. Asfura and Mr. Schexnayder show that they did not know of any dangerous conditions on the premises, and there is no countervailing evidence to establish that they should have known of a defect in the concrete.
When a motion for summary judgment is made and supported, the opposing party may not rest on mere allegations or denials, but must respond by affidavits or with other affirming evidence, showing there is a genuine issue of material fact. Gautreaux v. W.W. Rowland Trucking Co., Inc., 99-1002 (La.App. 5 Cir. 2/29/00), 757 So.2d 87, 90, writ denied, 00-915 (La.5/12/00), 761 So.2d 1291. In this case, the evidence submitted by the defendants supported their motion for summary judgment on all theories asserted by the plaintiffs. Therefore, the plaintiffs were required to respond with countervailing affidavits, depositions, or other evidence in support of their position, but they failed to do so. Accordingly, we find that the trial judge was correct when he granted the defendants' motion for summary judgment, dismissing all of the plaintiffs' claims against these defendants.

DECREE
For the reasons set forth above, we affirm the summary judgment granted in favor of the defendants, Iberic International, Carefree Realty, and St. Paul Reinsurance Company, Ltd.
AFFIRMED.
CHEHARDY, J., concurs in part, dissents in part and assigns written reasons.
CHEHARDY, J., concurs in part, dissents in part and assigns written reasons.
While I concur with the majority in affirming the trial judge's finding that We Can Dig It was an independent contractor, I respectfully dissent from the results reached by my colleagues herein in all other respects. I feel that the plaintiffs created a genuine issue of material fact regarding at least two issues: whether either of the defendants gave implied authorization to an unsafe practice and whether the work undertaken was inherently dangerous. I cannot agree with the majority's reasoning that the evidence "clearly" established that neither defendant exercised "any control" [emphasis in original] over the independent contractor's means or methods and, therefore, neither defendant gave authorization to any unsafe practice. I think that there was at least a genuine issue of material fact regarding implied authorization of unsafe practices that made this matter inappropriate for summary judgment. Further, in my opinion, the plaintiffs created a genuine issue of material fact regarding whether the work in this case was inherently dangerous when they argued that the concrete slab failed because it was not properly reinforced.
Further, in granting summary judgment and dismissing plaintiffs' claims, the trial judge did not address five theories raised by the plaintiffs, including violating state and local safety standards, violating OSHA standards, hiring an unlicensed and/or unqualified contractor, creating and *634 allowing a hazardous situation to exist on the premises, and maintaining defective premises. I agree with the plaintiffs that the trial judge's summary dismissal of all of their claims based on a finding of independent contractor status was improper. For the foregoing reasons, I respectfully dissent in part.
NOTES
[1] According to the trial court's October 21, 2003 judgment, the hearing on the defendants' motion for summary judgment was continued several times so that additional depositions could be taken.
[2] The plaintiffs designated the transcript of the September 29, 2003 summary judgment hearing as part of the appeal record. According to the court reporter, however, the matter was heard in chambers, no testimony was taken, and no transcription is available. Therefore, the record does not contain a transcript of the September 29, 2003 hearing.