944 So.2d 643 (2006)
Jeffery W. CRAYTON Individually and on Behalf of His Minor Children, Scott Crayton, Matthew Crayton and Margaret Crayton, and His Wife Angela Payne Crayton
v.
CENTRAL STORAGE CENTER, LLC, Mesa General Contractors LLC, and Otis Elevator Company.
No. 06-CA-441.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2006.
*644 Richard D. McShan, McShan Law Firm, Amite, LA, for Plaintiffs/Appellants.
John I. Hulse, IV, James A. Oswald, Hulse & Wanek, New Orleans, LA, for Defendants/Appellees, Central Storage Center, LLC and Mesa General Contractors, LLC.
John K. Nieset, Christovich & Kearney, LLP, New Orleans, LA, for Defendant/Appellee, Otis Elevator Company.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
The plaintiff has appealed the trial court's grant of summary judgment in favor of the defendants. For the reasons that follow, we affirm the judgment of the trial court.
FACTS:
On May 18, 2000, plaintiff, Jeffrey Crayton, was employed by All American Metal (All American), which had contracted to build a storage facility for Central Storage, LLC (Central Storage). As plaintiff was working on the second floor of the structure with a fellow employee stacking 14-foot-long sheets of metal, he fell into an unprotected opening to the floor below. Plaintiff suffered injuries to his wrist, heel, ankle, and back.
Plaintiff filed suit against Central Storage, Mesa General Contractors, LLC (Mesa), and Otis Elevator Company (Otis) on May 15, 2001. Plaintiff alleged that Central Storage was owner of the property, Mesa was constructing the building, and Otis had provided the specifications for the unprotected elevator shaft into which plaintiff fell. Plaintiff alleged that the defendants failed to take sufficient steps to ensure the safety of the workers, to notify the workers of the unprotected elevator shaft, failed to properly supervise the workers, and was negligent in allowing untrained workers to enter this incomplete worksite.
*645 All defendants filed Motions for Summary Judgments that were granted by the trial court. This timely appeal followed.
LAW AND DISCUSSION:
A Motion for Summary Judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Craig v. Bantek West, Inc., XXXX-XXXX (La.App. 1st Cir.9/17/04), 885 So.2d 1241. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof is on the mover to show that he is entitled to judgment as a matter of law. La. C.C.P. art. 966(C)(2) If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the Motion for Summary Judgment, the mover need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. Id.
On appeal in determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.
In its Motion for Summary Judgment, Central Storage alleges it should be granted summary judgment on two separate bases. First, Central Storage argues it was the statutory employer of plaintiff and thus is immune from tort liability. Central Storage explains that it was in the business of renting storage space to customers and contracted with All American to erect a building containing storage spaces to be rented to its customers. Central Storage argues that since the construction of this building was within its trade, business, or occupation, it is deemed to be the statutory employer of plaintiff.
Second, Central Storage argues that it was merely the property owner of the land upon which the building was being constructed. It entered into a contract with All American to erect the building and cannot be held liable for the negligence of this independent contractor. In support of this position, Central Storage cites the case of Sims v. Cefolia, 04-343 (La.App. 5 Cir. 11/30/04), 890 So.2d 626, writ denied, XXXX-XXXX, (La.3/11/05), 896 So.2d 73. In Sims, Iberic owned an apartment complex managed by co-defendant, Carefree Realty. Carefree Realty contracted with WCDI to perform plumbing work. Two minor workers of WCDI were injured during the course of the work. Suit was filed against WCDI, Iberic, and Carefree. Iberic and Carefree filed Motions for Summary Judgment claiming they could not be liable for the torts of WDIC, an independent contractor. In affirming the grant of summary judgment, this Court looked at several factors to determine whether the relationship of principal and independent contractor existed, including: (1) whether there was a valid contract between the parties, (2) whether the work being done was of an independent nature such that the contractor may employ non-exclusive means in accomplishing it, (3) whether the *646 contract called for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services rendered, (4) whether there was a specific price for the overall undertaking agreed upon;, and (5) whether the duration of the work was for a specific time and not subject to termination or discontinuation at the will of either side without a corresponding liability for its breach. Taking these factors into account, this Court found WCDI was an independent contractor. This Court went on to find that the two exceptions to the independent contractor defense, (1) a property owner cannot avoid liability if he exercises control over the contractor's method of performing the work or gives express or implied authorization to an unsafe practice, and (2) a property owner may not avoid liability for the actions of an independent contractor if the work undertaken is inherently or intrinsically dangerous or ultra hazardous, were not met in this case.
In support of its Motion for Summary Judgment, Central Storage submitted the contract between it and All American and portions of plaintiff's deposition. Our review of these documents indicates (1) there is a valid contract between Central Storage and All American, which provides that (2) All American was free to employ non-exclusive means to construct the building, (3) the building was being built according to All American's methods without being subject to the control and directions of Central Storage, except as to the result of the services rendered, (4) the contract contains a specific price for the work, (5) the duration of the work is for a specific time and is not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Thus, we find all of the factors necessary to form a relationship with Central Storage as the principal and All American as the independent contractor are met. There is nothing to indicate the exceptions to the independent contractor defense would apply as there is no indication that Central Storage exercised control over All American's method of erecting the building and the work was not inherently dangerous. Accordingly, there is no basis upon which to find Central Storage liable for any alleged negligence of the independent contractor All American. Therefore, the trial court correctly granted summary judgment in favor of Central Storage.
In its Motion for Summary Judgment, Mesa acknowledged that it was a contractor, but stated it was not involved in the erection of the building on Central Storage's property. As explained in the affidavit by Fred Mesa, he is the managing member of both Central Storage and Mesa. Central Storage is the owner of the land upon which the building was erected pursuant to a contract with All American. The only involvement Mesa had with the project was an oral agreement for Mesa to grade the lot and clean up. There is no evidence that Central Storage had a contract with Mesa to perform any of the supervision, erection, labor, operation of machinery, or any other work relative to the erection of the building. Nor is there any evidence that representatives or employees of Mesa were present on the job site, or that Mesa had any involvement or participation in the erection or construction activities being performed at the job site on May 18, 2000.
According to plaintiff's deposition, he was employed by All American and his boss was Robert Paine, the owner of All American. Plaintiff testified that his work was directed by Mr. Paine. He further testified that the only safety measure employed *647 by All American was to require all workers to wear a hard hat.
Plaintiff did not attach any documents to his Memorandum in Opposition to the Motion for Summary judgment filed by Central Storage and Mesa. When a Motion for Summary Judgment is made and accompanied by supporting documents, the opposing party may not rest on his allegations and denial; rather, he must come forth with affirming evidence to show there is a genuine issue of material fact. Sims, supra. Thus, plaintiff was unable to rebut Mesa's contention that Mesa was not involved in the erection of the building. Accordingly, we find the trial court correctly granted summary judgment in favor of Mesa.
Otis filed a Motion for Summary Judgment contending it was entitled to summary judgment because at the time of plaintiff's accident, Otis had not begun work installing the elevator at the Central Storage facility. In support of this position, Otis attached the contract between it and Central Storage, the time sheets showing the dates worked on the project and the affidavit of Dennis White, the location manager of the Otis office. Mr. White attested that the ticket sheets reflect that Otis's installation work did not begin until June 1, 2000. The contract between Otis and Central Storage stated it was the responsibility of Central Storage to "provide guarding and protection of the hoistway during construction."
In opposition to the motion, plaintiff argued that discovery was not complete in that the documents it received from Otis did not contain the specifications for the elevator shaft or any documents concerning the exact requirements needed for this particular elevator. Plaintiff did attach his Requests for Production of Documents and Otis's response to these requests. Nothing submitted by plaintiff rebuts Otis's documents indicating that it had not begun work at the job site at the time of plaintiff's accident. The documents submitted by Otis indicate that Otis had no responsibility for erecting a guard or in any other way protecting other workers from the hoistway. Our de novo review of the Motion for Summary Judgment indicates that Otis had no responsibility for plaintiff's accident. Accordingly, the trial court correctly granted summary judgment in favor of Otis.
On appeal, plaintiff re-urges his arguments that summary judgment was granted prematurely as discovery is not complete. Our review of the record indicates that suit was filed on May 15, 2001 and discovery requests were attached to the original petition. Service was held on both the petition and discovery requests and there is no indication in the appellate record as to when these documents were served on the defendants. The record indicates that Otis answered plaintiff's requests for production on August 16, 2004 and August 11, 2005. There is no indication in the record as to when Central Storage or Mesa responded to plaintiff's discovery requests. The record is void of any motions to compel or any other documents in which plaintiff attempted to pursue remedies provided by the Code of Civil Procedure to compel defendants to comply with discovery requests. Further, Central Storage and Mesa filed Motions for Summary Judgment on August 26, 2005. These motions were first set for hearing on November 8, 2005 and continued to December 8, 2005. Otis filed its Motion for Summary Judgment on November 9, 2005 and this motion was set for hearing on December 8, 2005. The motions were continued without date on December 8, 2005. A status conference was held on January 4, 2006 at plaintiff's request. In requesting this conference, plaintiff certified *648 that "all deposition, interrogatories, and other discoveries have been completed, or can be completed before trial." The Motions for Summary Judgment were heard on February 7, 2006. There is nothing in the record to indicate that plaintiff attempted to obtain further discovery from defendants during the time the Motions for Summary Judgment were pending. Thus, we find plaintiff's argument relative to the motions being premature because discovery was still pending is without merit.
CONCLUSION:
For the foregoing reasons, the judgments of the trial court are affirmed.
AFFIRMED.